UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| TONYA L. BOOKER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-01689-JMS-MJD |
| | ) | |
| NANCY A. BARRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tonya L. Booker requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d).[2] For the following reasons, the Magistrate Judge recommends that the District Judge **REVERSE** the Commissioner's decision.

### I. Background

Booker filed her application for SSI on May 7, 2013, alleging January 28, 2011 as the onset date of disability. [Dkt. 14-7 at 2-4 (R. 213-15).] In her disability report filed in conjunction with his application, Booker listed "Heart attack, 2 Stents, legs, feet, back,

---

[1] Nancy A. Berryhill is substituted for Carolyn W. Colvin as the nominal defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

1

depression, hbp"; "carpal tunnel in both hands"; and diabetes as her disabling conditions.[3] [Dkt. 14-7 at 6 (R. 217).] Booker's application was denied both initially on July 26, 2013 [Dkt. 14-5 at 2-5 (R. 139-42)] and upon reconsideration on November 1, 2013 [Dkt. 14-5 at 7-10 (R. 144-46)]. Booker requested a hearing on her application [Dkt. 14-5 at 12-13 (R. 149-50)], which was held before Administrative Law Judge Daniel J Mages ("ALJ") on March 9, 2015 [Dkt. 14-2 at 42 (R. 41)]. The ALJ issued his decision on March 20, 2015, again denying Booker's application. [Dkt. 14-2 at 14-32 (R. 13-31).] Booker timely filed her Complaint in this Court on June 27, 2016, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II. Legal Standard

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the

---

[3] Booker recited the relevant factual and medical background in extensive detail in his opening brief. [*See* Dkt. 20.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 21.] Because these facts involve Booker's sensitive and otherwise confidential medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. Overman v. Astrue, 546 F.2d 456, 462 (7th Cir. 2008) (citing Schmidt v. Apfel, 201 F.3d 970, 972 (7th Cir. 2000); Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." McKinzey v. Astrue, 641 F.3d 884, 891 (7th Cir. 2011) (quoting Schmidt v. Barnhart, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." Herron v. Shalala 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." Dixon, 270 F.3d at 1176. The scope of review is confined to the rationale offered by the ALJ. See SEC v. Chenery Corp., 318 U.S. 80, 93–95 (1943); Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010).

### III. The ALJ Decision

The ALJ first noted that Booker had a previous DIB application with a final decision dated March 27, 2013. [Dkt. 14-2 at 23 (R. 22).] The ALJ found no reason to reopen the previous proceeding and therefore determined that the relevant adjudication period began on March 28, 2013. [*Id.*] The ALJ next determined that Booker met the insured status requirements

3

of the Act through December 31, 2016, and had not engaged in substantial gainful activity since the alleged onset date of January 28, 2011. [Dkt. 14-2 at 25 (R. 24).]

At step two, the ALJ found Booker's severe impairments to include "chronic obstructive pulmonary disease, coronary artery disease, hypertension, hyperlipidemia, diabetes, hypothyroidism, obesity and history of carpel tunnel surgery." [*Id.* (citations omitted).] The ALJ further considered Booker's transient ischemic attacks, depression, and anxiety and determined that these conditions were not severe impairments. [Dkt. 14-2 at 26 (R. 25).] At step three, the ALJ found that Booker did not have an impairment or combination of impairments that meets or medically equals a Listing, specifically addressing Listing 3.02 for chronic respiratory disorders; Listing 4.04 for ischemic heart disease; Listing 4.00H for other cardiovascular impairments, including hypertension; obesity under several listings for musculoskeletal, respiratory, and cardiovascular impairments; and Listing 11.14 for peripheral neuropathy. [Dkt. 14-2 at 28 (R. 27).]

Before step four, "[a]fter careful consideration of the entire record," the ALJ determined that Booker had the RFC to perform light work with the following specific restrictions:

> [Booker is restricted to] sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering and handling bilaterally; no exposure to exposure to [sic] extreme heat or extreme cold; and no more than moderate exposure to wetness, humidity, dusts, fumes, gases or other respiratory irritants.

[Dkt. 14-2 at 28-29 (R. 27-28).] At step four, the ALJ found that Booker is able to perform her past relevant work as a network control operator. [Dkt. 14-2 at 34 (R. 33).] Based on these findings, the ALJ concluded that Booker was not disabled under the Act. [*Id.*]

4

## IV. Discussion

Booker argues that the ALJ incorrectly evaluated the medical evidence and that the Appeals Council erroneously determined that newly-submitted evidence was not new and material. The Court addresses each issue in turn.

### A. Treating Physician's Opinion & RFC

Booker argues that the ALJ incorrectly evaluated the medical evidence and thus reached an inappropriate RFC. Booker principally argues that the ALJ ran afoul of the treating physician rule[4] by discrediting Dr. Moreland's opinions, "particularly with respect to mental, non-exertional limitations." [Dkt. 22 at 4.] The Commissioner responds that the ALJ gave ample support for his decision.

Dr. Moreland, Booker's treating physician since 2001, completed several assessments opining as to Booker's physical and mental limitations.[5] In particular, Dr. Moreland consistently assessed Booker with depression [*e.g.* Dkt. 14-9 at 15, 29, 47 (R. 377, 409, 421)] and opined that her depression would prevent Booker from working. [Dkt. 14-11 at 8 (R. 512).] For example, Dr. Moreland opined that Booker's depression caused "marked" and "extreme" limitations in understanding and memory and in concentration and pace, among other limitations. [*Id.* at 8-9 (R. 512-13).] The ALJ and the parties all agree that Dr. Moreland's opinions would require a finding that Booker is disabled if given controlling weight.

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. As Booker's application was filed before March 27, 2017, the treating physician rule applies. *See id.* § 404.1527.

[5] In reply, Booker attacks only the ALJ's rejection of Dr. Moreland's mental assessments. The Court therefore considers Booker's challenge to the rejection of the physical assessments to be abandoned.

The ALJ, however, did not give Dr. Moreland's opinions controlling weight, observing that the "ultimate issue of disability is reserved to the Commissioner." [Dkt. 14-2 at 33 (R. 32).] In support, the ALJ noted several facts: Dr. Moreland saw Booker only three times during the relevant disability period; Dr. Moreland assessed Booker with a "normal" affect and cognition during an appointment; Booker "reported improvement with Cymbalta," an antidepressant [*id.*]; and Booker's "depression appears to be in response to various situational stressors, such as the death of her mother, health issues, and work" [Dkt. 14-2 at 26 (R. 25).] The ALJ concluded that, "[b]ased on the lack of support from Dr. Moreland's own treatment records and the other evidence of record, I decline to give said opinion persuasive weight. Rather, I find the opinions of the reviewing physicians with Disability Determination Services persuasive, as they benefited from reviewing the entire medical evidence of record." [Dkt. 14-2 at 33 (R. 32).] However, as Booker notes (and the Commissioner does not dispute), Dr. Moreland, like the state agency reviewing physicians, also had access to all medical evidence of record, having referred Booker to specialists and received carbon copies of all testing results. Ultimately, the ALJ provided no RFC accommodation for Booker's depression.

The so-called treating physician rule requires the ALJ to give a physician's opinion controlling weight if it is "(1) supported by medical findings[] and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). But "[e]ven when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Rather, the regulations require the ALJ to assign a weight to the opinion based upon several factors:

6

> (1) the "[l]ength of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion deserves; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.

*Scrogham*, 765 F.3d at 697 (quoting 20 C.F.R. § 404.1527(c)(2)-(5)) (alterations in original). The ALJ must "minimally articulate his reasons" for assigning a particular weight to the physician's opinion. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

The Court agrees that the ALJ's assessment of Dr. Moreland's opinion requires remand. First, the ALJ failed to explain what weight he assigned to Dr. Moreland's opinion, instead concluding that the opinion did not warrant "persuasive weight." As the "ALJ [was] not permitted simply to discard" the opinion once he determined it did not warrant controlling weight, *Scrogham*, 765 F.3d at 697, he was required to explain what weight the opinion warranted so that the Court could assess whether he properly accommodated any limitations in the RFC. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Even if the ALJ had articulated good reasons for rejecting Dr. Rhoades's opinion, it still would have been necessary to determine **what weight his opinion was due** under the applicable regulations." (emphasis added)).

The Court cannot assume that the ALJ considered all evidence and decided to give Dr. Moreland's opinion no weight, particularly in light of the evidence that the ALJ failed to address that lends support to Dr. Moreland's conclusions. For example, Dr. Koselke opined that Booker "exhibits moderate depressive symptoms with low energy and low motivation. Her ability to

work would be primarily be affected by her physical/medical difficulties, and secondarily by her moderate depressive symptoms." [Dkt. 14-9 at 34 (R. 396).] The ALJ, however, quoted only Dr. Koselke's conclusion that Booker's capacity would "primarily be affected by her physical/medical difficulties," omitting any discussion of Dr. Koselke's evaluation of Booker's depression. [Dkt. 14-2 at 26 (R. 25).] The ALJ may not ignore such evidence that "suggests an opposite conclusion." *Whitney v. Schweiker*, 695 F.3d 784, 788 (7th Cir. 1982).

Additionally, while the ALJ properly restricted the relevant disability period to March 28, 2013 due to the res judicata effect of the prior disability determination, the factors for evaluating a treating physician's opinion expressly require the ALJ to consider the length of the treating relationship. *See* 20 CF.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *id.* (c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion . . . ."). While the ALJ mentioned that Dr. Moreland has treated Booker since 2001, the ALJ makes no mention of Dr. Moreland's treatment records prior to March 2013. These records reveal that Dr. Moreland consistently diagnosed Booker with depression since at least 2011. [*E.g.*, Dkt. 14-9 at 15, 29, 47 (R. 377, 409, 421).] The regulations required the ALJ to consider the records prior to the disability period—not as independent evidence of disability, but as evidence that may support Dr. Moreland's opinion rendered during the relevant period. Again, the ALJ is required to confront the evidence that does not support his conclusion.

Finally, the ALJ found "the opinions of the reviewing physicians with Disability Determination Services persuasive, as they benefited from reviewing the entire medical evidence of record." [Dkt. 14-2 at 33 (R. 32).] But as Booker points out and the Commissioner has not

8

contested, Dr. Moreland likewise had before her all medical evidence of record at the time she rendered her opinions. Thus, this reason does not withstand scrutiny and further undermines the ALJ's assessment of Dr. Moreland's opinions.

The ALJ, after confronting the contrary evidence, may well again conclude that Dr. Moreland's opinions do not warrant controlling weight. But the ALJ must "build an accurate and logical bridge from the evidence to the conclusion." *Clifford*, 227 F.3d at 872. The ALJ failed to do so in this case, leaving unaddressed evidence that did not support his opinion. Accordingly, remand is required so that the ALJ may evaluate the opinions in light of this evidence and then actually assign a weight to Dr. Moreland's opinions.

**B. Other RFC Issues**

Having found that the ALJ's evaluation of Dr. Moreland's opinion requires remand, the Court summarily addresses Booker's remaining arguments regarding the ALJ's treatment of the medical evidence.

First, Booker contends that the ALJ failed to weigh the opinion of Dr. Djodjeva, a consultative examining physician. As Booker acknowledges, however, the ALJ discussed Dr. Djodjeva's findings at length. Moreover, while Dr. Djodjeva conducted an exam and made numerous medical findings that ultimately informed the ALJ's RFC assessment, Dr. Djodjeva did not render any RFC or similar opinion. Most critically, Booker fails to explain what else the ALJ should have done to accommodate Dr. Djodjeva's findings. *See, e.g.*, *Schmidt v. Astrue*, 496 F.3d 833, 844-45 (7th Cir. 2007) (requiring the claimant to explain how further consideration could impact ALJ's decision). Accordingly, the ALJ's treatment of Dr. Djodjeva's opinion does not warrant reversal.

9

Next, Booker briefly argues that the ALJ erred by assessing Booker with greater RFC restrictions than the state agency consulting physicians on the basis of evidence that was unavailable to those physicians. But Booker does not argue that this evidence required more restrictions than those imposed by the ALJ. *See, e.g.*, *id.* This argument also fails.

Finally, Booker argues that Dr. Koselke's assessment that Booker has "moderate depressive symptoms" runs afoul of the *O'Connor-Spinner* rule that the ALJ must accommodate all supported limitations in concentration, persistence, or pace in the claimant's RFC. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). Booker conflates an assessment of a medical condition with a functional limitation. Dr. Koselke assessed Booker with moderate symptoms of depression, but made no findings that Booker was limited in concentration, persistence, or pace. Thus, while the ALJ was required to consider how Dr. Koselke's opinion may support Dr. Moreland's opinion as explained above, Dr. Koselke's findings did not require an accommodation for limitations in concentration, persistence, or pace.

### C. Administrative Record

Finally, Booker argues that the Appeals Council erred in determining that additional submitted medical evidence was not "new and material" and then by failing to include the records in the administrative record. The Commissioner responds that the Appeals Council's determination was discretionary and unreviewable; that even if it were reviewable, Booker has failed to demonstrate that the records were new and material; and that the Appeals Council was not required to include the records in the administrative record.

The Appeals Council in this case issued its standard, boilerplate denial of review: "We have found no reason under our rules to review the Administrative Law Judge's decision.

Therefore, we have denied your request for review." [Dkt. 14-2 at 2 (R. 1).] In reaching this conclusion, the Appeals Council considered Booker's brief as well as

> medical records from Indiana University Methodist Hospital, dated June 1, 2015 through June 26, 2015 (74 pages) and IUH Methodist Hospital, dated November 23, 2015 (2 pages). The Administrative Law Judge decided your case through March 20, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 20, 2015.

[Dkt. 14-2 at 3 (R. 2).] The Appeals Council did not list these records on the "AC Exhibits List" [Dkt. 14-2 at 6 (R.5)] and they were not made part of the administrative record filed by the Commissioner in this Court.

The Seventh Circuit has explained the limited circumstances in which this Court may review the Appeals Council's decision:

> Our ability to review the Appeals Council's decision in the instant case is dependent on the grounds on which the Council declined to grant plenary review. If the Council determined Stepp's newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence "non-qualifying under the regulation," we retain jurisdiction to review that conclusion for legal error. However, if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence"—the Council's decision not to engage in plenary review is "discretionary and unreviewable."

*Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015) (citations omitted). Thus, where the Appeals Council determines that the additional evidence is new and material, but otherwise determines that it would not impact the ALJ's decision, that determination is unreviewable. *Id.* However, the Court may review a determination that additional evidence was not new and material. *Id.* at 725.

Moreover, even where the Appeals Council determines that the additional evidence is not new and material, it must "[a]ssociate a copy of the evidence the appropriate section of the file,

11

placing all medical evidence in the F section" to be "included in the certified administrative record if the case is appealed to Federal court." HALLEX I-3-5-20. And it is the Commissioner that "certifie[s]" that the record filed in this Court is complete. [Dkt. 13 at 2.]

The Appeals Council appears to have determined that the additional records are not new and material, thus making the Council's decision subject to limited review. *See Stepp*, 795 F.3d at 722; *Farell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). But the problem is that the Court cannot assess whether the records are in fact new and material because the additional evidence was not submitted to this Court.[6] "[T]he regulations place the burden on the Commissioner to ensure that the complete administrative record is before the Court," *Harrington v. Colvin*, No. 2:16-cv-00129-JMS-MJD, 2016 WL 7192258, at *4 (S.D. Ind. Nov. 21, 2016) (citing *Barnhill v. Colvin*, No. 1:15-cv-JMS-MJD, 2016 WL 6680358, at *7 (S.D. Ind. Nov. 14, 2016)), *report and recommendation adopted*, 2016 WL 7188275 (S.D. Ind. Dec. 12, 2016), and the Court cannot, on this record, conclude on the basis of the "dated" labels assigned by the Appeals Council that the additional records are not new and material. The fact that the records may have postdated the ALJ's decision does not mean that they did not contain evidence concerning Booker's condition during the relevant period; the Court cannot make this determination without actually reviewing the records. The Court should therefore order the Commissioner to make the rejected medical records part of the certified record on remand.

---

[6] As this Court has pointed out on another occasion, "[t]he Commissioner could have sought to remedy the failure to include the relevant records by moving to supplement the record with the omitted documents. Such was not done here." *Harrington*, 2016 WL 7192258, at *4 n.5. The Court reiterates this advice in this case.

## V. Conclusion

For the foregoing reasons, the Court concludes that the Appeals Council has committed legal error and that the ALJ has failed to build a logical bridge from the evidence to the conclusion. The Magistrate Judge therefore recommends that the District Judge **REVERSE** the Commissioner's decision and **REMAND** Booker's application for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 25 APR 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.